### PEOPLE v. NICHOLS.

(Supreme Court, Appellate Division, First Department. November 10, 1905.)

1. PERJURY—SUBORNATION—SUFFICIENCY OF EVIDENCE.

In a prosecution for subornation of perjury, evidence corroborating the testimony of the witness whose false testimony was procured reviewed, and *held* sufficient to support a conviction.

**2. SAME—SUBORNATION OF PERJURY.**
    One who deliberately created a situation by which another was apparently qualified to act as a surety on a bond, when in fact he owned no property and was not qualified, for the purpose of having him swear that he was the owner of certain real property of which he was not really the owner, and that it was at the instigation and procurement of defendant that such person became a surety and swore to a false deposition, was guilty of subornation of perjury.

Appeal from Court of General Sessions, New York County.

William Nichols was convicted of the crime of subornation of perjury, and appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, CLARKE, and INGRAHAM, JJ.

Wm. Nichols, in pro. per.
Edward Sandford, for the People.

INGRAHAM, J. The defendant was indicted under section 105 of the Penal Code, which provides that:

"A person who wilfully procures or induced another to commit perjury, is guilty of subornation of perjury."

Upon the trial it was proved that on March 27, 1903, an order of arrest was issued by a justice of the Supreme Court, requiring the sheriff to arrest one Davis, the defendant in the action in which the order was granted, and fixing his bail at $2,000. Under this order Davis was arrested by the sheriff on March 27, 1903, and was subsequently released by a deposit with the sheriff of $2,000, the amount of the bail. Steps were then taken to procure a bond to be substituted for this deposit, and on April 8, 1903, one Charles Sterckx, with Peter Shortell, offered himself as a surety upon this bond. He was examined before an assistant bond clerk in the sheriff's office, who was a commissioner of deeds, and his statement as to his qualification as surety was reduced to writing. On the following day he appeared before the commissioner of deeds and signed and swore to his deposition. It was alleged that Sterckx swore falsely in this deposition when he stated that he owned a lot of land 25x100 feet on 100th street, 50 feet west of Madison avenue, for which he paid $14,000; that he bought this property about April 1, 1900, and the title thereto had been pronounced good; that the title was absolutely and exclusively his own, and had been ever since he purchased it; that there were no judgments against him. Sterckx was immediately thereafter arrested and indicted for perjury, to which indictment he pleaded guilty.

Upon the trial Sterckx, who was brought from state's prison, was a witness for the people. He testified that he first became acquainted with the defendant in May, 1902; that in March, 1903, the defendant came to the witness and said that one of his customers was in trouble and wanted a bondsman; that the witness replied that he could not go on the bond, because he did not have any real estate in the county of New York; that the defendant then said that he would turn some of his real estate over to the witness, so that the witness would be accepted; that the day after defendant came to

the witness' place of business and had with him a deed, drawn in pencil and which he delivered to the witness, whereupon the defendant and the witness went to the office of Peter Vermilye, an attorney at law, who was also a notary public; that while there this instrument that had been delivered by the defendant to the witness was copied in typewriting, and when it was finished the defendant acknowledged the instrument before Mr. Vermilye; that at the same time there had been prepared another deed by which the witness reconveyed the property to the defendant, and after the defendant had executed and acknowledged the first deed the witness signed and executed a deed reconveying the premises that defendant had conveyed to him to the defendant; that defendant then delivered the deed that he had executed to the witness, who then delivered the deed that he had executed reconveying the premises to defendant; that subsequently the witness delivered the deed that he had received to defendant, who stated that he would have it recorded. The consideration inserted in these deeds was $14,000. No money passed between the witness and the defendant upon the execution of these instruments, and on the 7th of April the deed was returned to the witness through the post office from the register's office. On the morning of the 8th of April he took this deed and went to the sheriff's office between 10 and 11 o'clock; that when he got there he found the other surety, with the defendant, outside of the office, and the defendant told the witness to go upstairs, as they were ready to take his statement; that the witness then went to the sheriff's office and made his statement. When he came down he saw the defendant standing in the same place; that defendant asked the witness what had been done, and the witness told him that he had made his statement, and that the bond clerk had taken it down and told him to come the day after, and to this the defendant replied, "That is all right; I will see the right party;" that on the following day (April 9th) the witness met defendant again at the same place, and defendant then told the witness to go upstairs, as they were ready with the bond, whereupon the witness and the other surety went into the sheriff's office, executed the bond and his deposition as to his sufficiency as a surety, and swore to it before the commissioner of deeds, and then left the office, seeing the defendant outside of the building, the other surety being with him; that the other surety was disputing with defendant about how much money he was going to get for giving bail, and that the defendant said he could not pay him there, but would pay him afterwards; that the witness then asked the defendant where he came in, and the defendant said, "I will take care of you later on;" that before this, and about the 3d or 4th of April, the defendant told the witness that he would be paid for his trouble $20.

There is no question but that, if the testimony of this witness is true, the defendant was guilty of subornation of perjury. The defendant claims that this witness must be considered as an accomplice, and that the defendant could not be convicted of subornation of perjury unless the testimony of the person whom he suborned was corroborated. Upon the trial the learned recorder upheld this

contention and charged the jury that Sterckx, who committed the perjury, was an accomplice with the defendant, and that to justify the jury in convicting the defendant they had to find that his testimony was corroborated. Assuming that this was correct, we think there was ample corroboration, and that the conviction could stand without the evidence of Sterckx. Clarke, a witness called for the people, testified that in the latter part of March or the early part of April he had a conversation with the defendant about a bond for Davis; that the defendant said he would procure Capt. Sterckx to become the other bondsman; that he had a second meeting with the defendant, who said he had given a deed to Sterckx so that he could qualify on the bond; that the defendant was introduced to him as the man who could procure a bondsman, and immediately after that the defendant said that he had a friend, Capt. Sterckx, and that he would get him to go on the bond; that subsequently the defendant said that a deed had been made and given to Sterckx and had been placed on record, and that the delay was caused by waiting to get the deed from the register's office; that he saw the defendant at the sheriff's office, that the two sureties were there, and that the defendant told the witness to take them up to the sheriff's office and that they would justify; that on the next day (9th of April) the witness saw defendant at the sheriff's office with the two sureties talking together. Journeay testified that he had a conversation with the defendant in regard to a bond for Davis; that the defendant stated to him that he had given Sterckx a deed and it was being recorded; that he and the defendant went up to Sterckx's place on the 7th of April; that the defendant saw the envelope containing the deed from the register's office, opened it, and took the deed out and looked at it; that the witness saw the defendant the next day (April 8th) in front of the Stewart Building with the two sureties and the witness Clarke; that the two sureties and Clarke went upstairs in the sheriff's office; that on the next day the witness saw the defendant at the same place with the two sureties, and that the sureties and Clarke went upstairs; that at that time there was some discussion about the money that these two sureties were to get for going on the bond. Mr. Alleman, the attorney for Davis, testified that he saw the defendant about getting sureties for Davis; that he asked defendant whether the sureties were able and willing to justify, and the defendant spoke to one or two persons who were present, and came back and said "Yes." Mr. Vermilye, the notary before whom the deed from the defendant to Sterckx was executed, testified to the execution of the deed, and also to the fact that at the same time Sterckx executed another paper, which he acknowledged, and that he noticed that they were conveyances of real property.

It is quite clear from this evidence that Sterckx did not have the title to this property on the 9th of April, when he swore to his justification as surety; that he had paid nothing for the property; that the title to the property was never examined by Mr. Vermilye, and that he was not a freeholder of the state of New York, and was not worth the sum specified in the bond; that it was at the

instigation of the defendant that he executed the bond and swore
to these affidavits and to his justification; that Sterckx was clear-
ly guilty of perjury; and that this defendant was the procuring
cause of Sterckx's having committed perjury.

The appellant also claims that there was error committed by the
learned recorder in his charge to the jury. There was no exception
to the charge, and an examination of it discloses no error that
would require a reversal. A careful examination of the whole case
satisfies us that the defendant was clearly guilty; that he deliberately
created a situation by which Sterckx was apparently qualified to act
as a surety, when in fact he owned no property and was ·not
qualified; that this was done for the purpose of having him swear
that he was the owner of this real property of which he was not
the owner; and that it was at the instigation and procurement of
the defendant that Sterckx became a surety and swore to this
false deposition.

It follows that the defendant was properly convicted, and that
the judgment appealed from must be affirmed. All concur.